**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**UNITED STATES OF AMERICA,**

**v.** **CRIMINAL NO. 4:09-cr-81-7**

**ANDRA G. GREEN,**

**Defendant.**

## OPINION AND ORDER

This matter comes before the court on Defendant's pro se Motion for Extraordinary and Compelling Reasons, 18 U.S.C. § 3582(c)(1)(A). ECF No. 802 ("Motion for Compassionate Release" or "Motion"). Defendant's Motion for Compassionate Release seeks a sentence reduction to time served under 18 U.S.C. § 3582(c)(1)(A). Id. at 8. For the reasons explained in this Opinion and Order, Defendant's Motion is **DENIED**.

## I. INTRODUCTION

### A. Background[1]

At the outset of this criminal case, Defendant was a founding member and the "recognized leadership" of a "neighborhood rap group" and criminal gang known as the "Ivy Street Gangstas" ("ISG"). ECF No. 738 ¶¶ 27, 31, 52 (Presentence Investigation

[1] The facts recounted in this subsection underlie Defendant's conviction and sentence under Count Thirty-Four of the Third Superseding Indictment in this case. See ECF Nos. 284 at 36-37 (Third Superseding Indictment), 515 (Judgment).

Report, hereinafter "PSR"). The ISG operated in Newport News, Virginia, and was comprised of members of other gangs, including members of the "Bloods" and "Crips" gangs. Id. ¶ 27. Together, the ISG recorded rap songs about their criminal exploits, which included, but were not limited to, distribution of illegal drugs, the use of firearms to commit robberies and murder, and fraud. Id. ¶ 31. Defendant's history of criminal activity with the ISG is voluminous and documented at length in the PSR. See generally id. For example, the PSR documents Defendant engaging in, or conspiring to commit, inter alia, check and credit card fraud, illegal drug manufacture and distribution, and armed robbery between 2004 and 2009. See, e.g., id. ¶¶ 36, 46, 50, 64, 66, 67-70, 74.

On or about March 20, 2009, Defendant was driving through the Brookridge Apartment complex in Newport News, Virginia, looking for a drug dealer to rob with ISG Members/Associates Zakarie Williams, Alfonso Sheppard, Raymond Brown, as well as a juvenile. ECF No. 431 at 4 (Statement of Facts); see PSR ¶¶ 28, 80. Demareo Hardy, a known drug dealer, was walking on the sidewalk when Sheppard told Defendant to stop their vehicle. ECF No. 431 at 4; PSR ¶ 80. Defendant handed Sheppard a Ruger P-95 pistol belonging to Williams. PSR ¶ 80. Sheppard exited the vehicle and confronted Hardy while the others remained in the vehicle. Id. However, Defendant drove the vehicle away after seeing another vehicle approach, but he thereafter returned. ECF No. 431 at 4. Upon

return, Defendant told Brown and the juvenile to get out and check on Sheppard. Id.; PSR ¶ 80. Then, Hardy attempted to punch Brown, and Brown, Sheppard, and the juvenile started assaulting Hardy. ECF No. 431 at 4. Brown stole Hardy's clothes and some items picked up off the ground and ran back to the vehicle. Id. at 4-5. Sheppard then shot Hardy multiple times. Id. at 5. Defendant, Sheppard, Williams, Brown, and the juvenile then fled the scene in the vehicle. Id. Hardy did not immediately die, and residents of a nearby apartment complex tried to assist him after hearing his cries for help. Id. Police and paramedics found Hardy naked, and Hardy later died after being transported to a hospital for surgery. Id. An autopsy confirmed multiple gunshot wounds to the torso to be the cause of death. Id.

Defendant and Williams spoke with Newport News Police on March 27, 2009, at which time both told police that Sheppard shot Hardy. Id. Williams also led police to the recovery of her Ruger P-95, which she had stashed with a store owner in Newport News. Id. She "would testify that [Defendant] and the others were going to rob a drug dealer at a hotel before the Hardy homicide, but the plans for that robbery did not materialize." Id. at 6. Williams would have also testified that Defendant "handed the firearm to Sheppard" before Sheppard robbed and shot Hardy. Id. Shell casings at the crime scene and bullets recovered from Hardy's body matched

the Ruger P-95 owned by Williams and recovered by police in Newport News. Id. at 4-6.

**B. Conviction and Sentence**

On October 3, 2011, Defendant pleaded guilty to Counts Twenty-Nine and Thirty-Four of the Third Superseding Indictment in this case, both of which charged Defendant with Use of a Firearm During a Crime of Violence Resulting in Death, in violation of 18 U.S.C. §§ 924(j), 2. ECF Nos. 430 (Plea Agreement), 433 (Order Accepting Plea of Guilty); see ECF No. 284 at 29, 36-37 (Third Superseding Indictment). Count Twenty-Nine identified two (2) predicate crimes: conspiracy to commit Hobbs Act robbery and the attempted Hobbs Act robbery of John Henry Green on January 18, 2007. ECF No. 284 at 29.[2] Count Thirty-Four also identified two (2) predicate crimes: conspiracy to commit Hobbs Act robbery and the completed Hobbs Act robbery of Demareo Hardy on March 20, 2009. Id. at 36-37.[3] On January 25, 2012, the court adjudged Defendant guilty on both Counts and sentenced him to two (2) concurrent terms of life imprisonment. ECF No. 515.

On April 11, 2016, Defendant filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in

---

[2] Defendant's alleged offense under Count Twenty-Nine is referenced in this Opinion and Order exclusively for the purpose of considering Defendant's "history" under 18 U.S.C. § 3553(a)(1). See infra note 15 and accompanying text.

[3] See supra note 1 and accompanying text.

Federal Custody. ECF No. 644 ("Habeas Petition"). The court denied the Habeas Petition as untimely on June 7, 2016. ECF No. 653 (Dismissal Order). Defendant appealed on August 29, 2016, ECF No. 660, and the Fourth Circuit placed his appeal in abeyance pending resolution of a pertinent case before the Supreme Court, ECF No. 665. On May 16, 2023, the Fourth Circuit held in a published Opinion that Defendant's Habeas Petition was timely and that his conviction under Count Twenty-Nine was no longer supported by a valid predicate offense under 18 U.S.C. § 924(c). ECF No. 749; see United States v. Green, 67 F.4th 657, 662 (4th Cir. 2023). Thus, the Fourth Circuit vacated the court's Dismissal Order as it related to Count Twenty-Nine and remanded "with instructions to vacate that conviction and sentence." Green, 67 F.4th at 662. The Fourth Circuit affirmed the court's dismissal of Defendant's Habeas Petition as it concerned his conviction and sentence under Count Thirty-Four. Id. at 671. Defendant filed a Petition for Writ of Certiorari to appeal the Fourth Circuit's ruling, see ECF No. 763 ("First Certiorari Petition"), which the Supreme Court denied on October 2, 2023, ECF No. 773.[4]

---

[4] While his First Certiorari Petition was pending, Defendant filed a second Motion to Vacate pursuant to 28 U.S.C. § 2255, ECF No. 759 ("Second Habeas Petition"), as well as a "Motion for Habeas Corpus Writ of ad subjuciedum," ECF No. 760. The court dismissed these motions on August 16, 2023, and declined to issue a certificate of appealability. ECF No. 767 ("2023 Dismissal Order"). Defendant appealed on August 28, 2023. ECF No. 770. The Fourth Circuit denied a certificate of appealability and dismissed

Following remand, the United States moved to correct Defendant's Judgment on May 18, 2023. ECF No. 752 (Motion to Correct the Judgment). The United States did not seek resentencing and instead requested that the court simply vacate Defendant's conviction and sentence under Count Twenty-Nine. Id. at 3. On June 11, 2024, the court issued an Opinion vacating Defendant's conviction and sentence under Count Twenty-Nine. ECF No. 786; see Green v. United States, 737 F. Supp. 3d 351, 356 (E.D. Va. 2024). The court provided, however, that Defendant's "conviction and sentence on Count 34, shall remain in full force and effect." Green, 737 F. Supp. 3d at 356. Thus, Defendant remains incarcerated under a life sentence on Count Thirty-Four. See ECF No. 515.

**C. Motions for Sentence Reduction**

The court notes that the instant Motion is not Defendant's first request for compassionate release or a sentence reduction. Defendant filed a pro se Motion to Reduce Sentence Pursuant to the First Step Act of 2018 on August 1, 2019. ECF No. 674. The court denied this motion on August 16, 2019. ECF No. 676. Defendant then filed a "Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)" on May 21, 2021. ECF No. 730. That motion was defective, and it was stricken after Defendant failed to correct

---

his appeal on January 28, 2025. ECF No. 794. Defendant then filed a second Petition for Writ of Certiorari concerning the court's 2023 Dismissal Order, see ECF No. 796, which the Supreme Court denied on October 6, 2025, ECF No. 799.

the defects. Id.; see ECF No. 741 (Order Striking Pleadings). On January 3, 2023, Defendant moved again for compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that his COVID-19 diagnosis, which Defendant characterized as a "terminal illness," presented extraordinary and compelling reasons warranting relief. ECF No. 743.[5] Defendant also argued that his conviction under Count Thirty-Four was invalid given intervening changes in the law, further presenting extraordinary and compelling reasons. Id. at 5. The court denied this motion on August 17, 2023. ECF No. 769.

Defendant moved again for compassionate release on May 31, 2024. ECF No. 785. However, the court declined to exercise jurisdiction to hear this motion because, at that time, this criminal case was on appeal while the Fourth Circuit considered the dismissal of Defendant's Second Habeas Petition. See ECF No. 787 (Dismissal Order). Accordingly, Defendant's motion was dismissed without prejudice on June 25, 2024. Id. at 7-8. The court provided that Defendant could refile his compassionate release motion after resolution of his appeal. Id. at 8.

On October 22, 2025, after all appeals in Defendant's lengthy postconviction proceedings had resolved, Defendant filed a "Motion for Extraordinary and Compelling Reasons, 18 U.S.C.

---

[5] Defendant later filed a "Motion for Writ of Habeas Corpus ad subjiciendum," ECF No. 751, seeking to be heard concerning this successive request for compassionate release. On August 17, 2023, the court denied this motion. ECF No. 769 at 15-16.

§ 3582(c)(1)(A)." ECF No. 800 ("Defective Motion"). The Defective Motion was subject to defect for lack of service on the United States Attorney at Newport News. See ECF No. 801 (Order Striking Pleadings). Defendant filed the instant Motion on November 24, 2025, to correct this defect. Defendant argues that extraordinary and compelling reasons exist for a reduction of his sentence to time served. ECF No. 802 at 1-2, 8. He also argues that "a sentence reduction is not contrary to the § 3553(a) factors." Id. at 4.[6]

On December 3, 2025, the court directed the United States to respond to Defendant's Motion for Compassionate Release. ECF No. 803 (Order). The United States filed its Response in Opposition to Defendant's Motion for Compassionate Release on February 2, 2026. ECF No. 804 ("Response"). The United States argues that Defendant is not eligible for compassionate release, as he has neither satisfied the exhaustion requirement of 18 U.S.C.

---

[6] Although the instant Motion is nearly identical to the Defective Motion, it omits various certificates of achievement attached as exhibits to the Defective Motion, see ECF No. 800-1 at 2-36, and instead includes a Bureau of Prisons ("BOP") form titled "Individualized Needs Plan - Program Review," which lists Defendant's coursework while incarcerated, ECF No. 802-1 at 2-5. As stated in the court's Order dated December 3, 2025, the court considers the instant Motion as correcting and amending the Defective Motion, and the instant Motion will serve as the operative pleading in this matter. ECF No. 803 at 2 n.1 (citing Fawzy v. Wauquiez Boats SNC, 873 F.3d 451, 455 (4th Cir. 2017)). However, the certificates attached to the Defective Motion, see ECF No. 800-1, will be considered as supporting documentation for the coursework listed in the Individualized Needs Plan - Program Review form, see ECF No. 802-1.

§ 3582(c)(1)(A), nor established "extraordinary and compelling reasons" thereunder. ECF No. 804 at 7-13. The United States also argues that the 18 U.S.C. § 3553(a) sentencing factors do not support release. ECF No. 804 at 13-19.

Defendant's Reply was filed on March 6, 2026. ECF No. 805. With briefing on Defendant's Motion for Compassionate Release completed by the parties, the Motion is ripe for a ruling.

**II. EXHAUSTION**

Before the court may consider a motion for compassionate release brought by a prisoner pursuant to 18 U.S.C. § 3582(c)(1)(A), the movant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or there must have been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Movants may satisfy this exhaustion requirement by "wait[ing] 30 days from the date of their initial request to file a motion in the district court," even if the warden has not responded to their request. United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021). The requirement "is a non-jurisdictional claim-processing rule," and therefore "may be waived or forfeited." Id. at 130.

Defendant states that he filed an "administrative remedy" with the Warden of USP Terre Haute on September 3, 2025, ECF No. 802 at 2, and his Reply includes Defense Exhibit 1 as proof of

exhaustion, see ECF No. 805-1. Defense Exhibit 1 consists of a handwritten "Request for Administrative Remedy" form dated September 3, 2025, and signed by Defendant. See id. The grounds for compassionate release stated therein reflect the grounds stated in Defendant's Motion.

The United States "contends that [Defendant] has not exhausted his administrative remedies as the BOP has no record of his request to the warden." ECF No. 804 at 7. In support of this statement, the United States provides Government Exhibit 1, consisting of an email thread from BOP Supervisory Attorney Christina A. Kelley, stating that staff at Defendant's facility at the time, USP Terre Haute,[7] "do not have a record of having received any requests for compassionate release from [Defendant]." ECF No. 804-1.

The BOP's lack of pertinent records is unusual. See id. Critically, Defendant has not provided evidence of his Warden's receipt of his Request for Administrative Remedy. See 18 U.S.C. § 3582(c)(1)(A) (providing that an inmate may file a motion for compassionate release "30 days from the receipt of such a request by the warden of the defendant's facility" (emphasis added)). Defense Exhibit 1 shows no mark or signature denoting receipt by

---

[7] Defendant was incarcerated at USP Terre Haute in September 2025, and was transferred to USP Coleman II in June 2026. See ECF No. 807 (Letter to Clerk); Find an Inmate, Bureau of Prisons https://www.bop.gov/inmateloc/.

Defendant's facility or his Warden. See ECF No. 805-1 at 1. A whole section of the Request for Administrative Remedy is labeled "Part C- Receipt," which contains a space for signature by a receiving "staff member." Id. (citation modified). The entirety of "Part C- Receipt" is left blank in Defense Exhibit 1. Id. Accordingly, Defense Exhibit 1 does not establish that Defendant actually sent his Request for Administrative Remedy to his Warden or that the Warden received it, and given the BOP's lack of records concerning Defendant's compassionate release request, Defendant has failed to show that he "wait[ed] 30 days from the date of [his] initial request to file a motion in the district court." Muhammad, 16 F.4th at 131. However, because the exhaustion requirement "is a non-jurisdictional claim-processing rule," id. at 130, and because the United States addressed the merits of Defendant's Motion for Compassionate Release, ECF No. 804 at 8-19, the court will address the merits of Defendant's Motion.

## III. MERITS

Ordinarily, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), provides an "exception" to this rule. United States v. Centeno-Morales, 90 F.4th 274, 278 (4th Cir. 2024). Under that statute, the court may, "upon motion of the defendant . . . reduce the term of imprisonment." 18 U.S.C. § 3582(c)(1)(A).

Evaluating a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is a "two-step analysis." Centeno-Morales, 90 F.4th at 279. "First, the court must determine that the prisoner is eligible for a sentence reduction because he has shown 'extraordinary and compelling reasons' for release." Id. "The prisoner bears the burden of demonstrating extraordinary and compelling reasons." United States v. Bueno, 821 F. Supp. 3d 570, 580 (E.D. Va. 2026) (Smith, J.). Second, the court must "evaluate the relevant § 3553(a) factors." Centeno-Morales, 90 F.4th at 279. The court may only grant the prisoner's motion if those factors "favor release." United States v. Malone, 57 F.4th 167, 173 (4th Cir. 2023) (citing 18 U.S.C. § 3582). Additionally, the court may only reduce a prisoner's sentence pursuant to § 3582(c)(1)(A) if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A); see Rutherford v. United States, 146 S. Ct. 1320, 1333 (2026) (stating that Congress "expressly cabined district courts' discretion" to grant compassionate release).[8]

---

[8] In November 2023, the United States Sentencing Commission issued a revised policy statement directing that district courts cannot reduce a prisoner's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), unless the court first determined that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." See U.S. Sent'g Comm'n, Guidelines Manual § 1B1.13(a)(2) (Nov. 2025) (hereinafter cited as "USSG").

**A. Extraordinary and Compelling Reasons**

Defendant argues in his Motion that "extraordinary and compelling reasons" make him eligible for compassionate release. ECF No. 802 at 2-3, 5-8. Proffered reasons include that Defendant (1) participated in a gang "drop-out" program, id. at 2-3; (2) was convicted for a crime he committed at a youthful age, id. at 5-8; (3) suffered a traumatic upbringing, id. at 7; (4) received "an unusually long sentence" of which Defendant has served at least ten (10) years, id.; and (5) has undergone significant rehabilitation during his incarceration, id. Further, Defendant argues that his release is justified because of his "close ties with family," "constant pursuit of mental growth," "advanced age as an adult," and because he "presents no danger to others upon release." Id. Finally, Defendant appears to argue at various points in his Reply that he is innocent and that his conviction and sentence under Count Thirty-Four is unlawful. See, e.g., ECF No. 805 at 2, 4-8. The court will address each of these grounds.

i. Gang "Drop-Out" Program and Rehabilitation

Defendant "argues his successful participation in the [gang] 'drop out' program rises [sic] levels of extraordinary and compelling circumstances under [USSG] § 1B1.13(b)(5)." ECF No. 802 at 2. Defendant also argues that his "drop out" designation presents extraordinary and compelling reasons for his release when

considered with his "educational and rehabilitative programs" completed while incarcerated. Id. The United States "does not contest [] that the National Gang Unit has designated [Defendant] 'Crips Inactive,'" ECF No. 804 at 11, and the evidence supports that Defendant is not an active "Crips" member, see ECF No. 802-1 at 1 (BOP Memorandum for Inmate File designating Defendant as "Crips Inactive" pursuant to National Gang Unit investigation).

Participation in the BOP's gang "drop out" program is not among the extraordinary and compelling reasons enumerated by Sentencing Guidelines Sections 1B1.13(b)(1) through (4), such as an inmate's illness or old age, or the death of certain family members. See USSG § 1B1.13(b)(1)-(4); see also Fernandez v. United States, 146 S. Ct. 1292, 1304 (2026) (referring to these enumerated bases as the "heartland 'extraordinary and compelling reasons'"). Section 1B1.13(b)(5) states, however, that "[e]xtraordinary and compelling reasons exist" if "[t]he defendant presents any other circumstance or combination of circumstances," which, considered alone or in combination with other enumerated reasons, "are similar in gravity" to the extraordinary and compelling reasons enumerated in Sections 1B1.13(b)(1) through (4). USSG § 1B1.13(b)(5). This provision grants the court some latitude to find "extraordinary and compelling reasons," but "the terms 'extraordinary' and 'compelling' . . . are not so flexible as to encompass any consideration." Rutherford, 146 S. Ct. at 1332. Relevant here,

rehabilitation "is not, by itself," grounds for a finding of extraordinary and compelling reasons, though "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." USSG § 1B1.13(d); see 28 U.S.C. § 994(t); see also United States v. Davis, 99 F.4th 647, 659 (4th Cir. 2024), abrogated on other grounds by, Rutherford, 146 S. Ct. 1320.

Courts have generally treated participation in a gang "drop out" program as a form of rehabilitation which does not, in itself, establish extraordinary and compelling reasons. See, e.g., United States v. Chavez, 757 F. Supp. 3d 585, 594 (S.D.N.Y. 2024); United States v. Andrews, 705 F. Supp. 3d 142, 151 (S.D.N.Y. 2023); United States v. Salinas, 818 F. Supp. 3d 1133, 1139 n.6 (E.D. Cal. 2026), abrogated on other grounds by, Rutherford, 146 S. Ct. 1320; Heuser-Whitaker v. United States, No. 2:18-cr-177, 2026 WL 1419124, at *2-3 (E.D. Va. May 20, 2026) (Jackson, J.). But cf. United States v. Beres, Crim. No. 18-58, 2023 WL 8809320, at *2 (D. Mont. Dec. 20, 2023) (district court determined that a prisoner's completion of a gang "drop out" program is "not simply a rehabilitation program" because it "requires a defendant to provide valuable information to the relevant federal agencies to combat gang activity and could, potentially, endanger the life of a defendant"). Thus, in Beres, the District of Montana held that

a "model" inmate's participation in a "drop out" program was "'similar in gravity' to other extraordinary and compelling circumstances" because the inmate had "provided a service beyond his own rehabilitation and at his own risk." Id. (quoting USSG § 1B1.13(b)(5)).

Insofar as Defendant seeks a sentence reduction on the basis of his substantial assistance to the United States in connection with a gang "drop out" program, he has failed to do so. First, a defendant's cooperation with the government is far from unusual or extraordinary. See Rutherford, 146 S. Ct. at 1332 ("A reason is extraordinary and compelling only if it is sufficiently unusual and convincing to warrant compassionate release." (citation modified)); see also Fed.R.Crim.P. 35(b). Importantly, Defendant has not shown that his "Crips Inactive" status amounts to the "drop out" status achieved by the inmate in Beres. 2023 WL 8809320, at *2; see United States v. Avila, No. 2-cr-464, 2024 WL 4027973, at *2 (N.D. Ill. Sept. 3, 2024) (finding no extraordinary and compelling reasons because the inmate had not shown that his "gang disassociation [rose] to the level of the comprehensive 'drop out' program completed by the defendant in Beres"). Nor has Defendant shown that he provided services "beyond his own rehabilitation and at his own risk." United States v. Lowery, No. 1:21-cr-45, 2026 WL 593933, at *2 (M.D.N.C. Mar. 3, 2026); accord United States v. Alston-Currie, No. 1:13-cr-214, 2025 WL 2390537, at *7 (M.D.N.C.

Aug. 18, 2025) (finding no extraordinary and compelling reasons because the inmate "[had] not provided meaningful information about his dropout program, let alone evidence that he faces any particular risk because of his participation in that program"). Thus, Defendant's "Inactive" designation and his participation in a "drop out" program, without more, fail to establish circumstances "similar in gravity" to extraordinary and compelling reasons under Sentencing Guidelines Sections 1B1.13(b)(1)-(4). See USSG § 1B1.13(b)(5).

As to Defendant's overall rehabilitation, Defendant's efforts at rehabilitation are neither extraordinary and compelling in their own right nor extraordinary and compelling when considered with other factors. See USSG § 1B1.13(d). The court commends Defendant's efforts to educate himself while incarcerated, as well as his stated commitment to "mental growth." See ECF Nos. 800-1 at 2-36, 802 at 7, 802-1 at 2-3.[9] The court also commends Defendant's "Inactive Crips" status, insofar as it may reflect Defendant's disassociation from that gang. See ECF No. 802-1 at 1. Further, the court considers Defendant's now claimed "close ties with family," despite his upbringing,[10] and his "age as an adult now." ECF No. 802 at 7 (emphasis omitted). Defendant then asserts

[9] See supra note 6 and accompanying text.

[10] See PSR ¶¶ 192-96, 211; infra Sections III.A.ii., III.B.

that he "presents no danger to others upon release." Id. Nevertheless, the court cannot ignore Defendant's "HIGH RISK RECIDIVISM LEVEL," as assessed by the BOP on July 10, 2025. ECF Nos. 802-1 at 4, 804-3 at 2. Nor can the court ignore Defendant's abysmal disciplinary record while incarcerated, which includes infractions as recent as April 16, 2025. See ECF No. 804-2. Some of Defendant's more recent infractions include threats of bodily harm, disruptive conduct-high, introduction of drugs and alcohol into his facility, possession of alcohol or drugs, fighting, and possession of a dangerous weapon. Id. at 1-2, 4-6. In light of Defendant's assessed recidivism risk and his extensive and recent disciplinary history, Defendant's rehabilitation is not, at this juncture, extraordinary and compelling when considered alone or with other factors. See USSG § 1B1.13(d). Defendant's participation in a "drop out" program does not alter this conclusion; he is not the "model inmate" awarded relief in Beres. 2023 WL 8809320, at *2.

ii. Youthful Offender and Traumatic Upbringing

Defendant committed his offense under Count Thirty-Four at the age of twenty-two (22), and he was sentenced at the age of twenty-five (25). See PSR at 3. He claims that his youthful age, when considered with his "traumatic upbringing," presents extraordinary and compelling reasons for his compassionate release. ECF No. 802 at 5-8. Defendant also claims extraordinary

and compelling reasons warrant his release because he received a life sentence on Count Thirty-Four, whereas certain older codefendants received a similar sentence or have already been released. See id. at 5.

The Sentencing Guidelines do not list an inmate's youthful age at the time of his offense as an extraordinary and compelling reason. As previously discussed, the court may consider other grounds for a finding of extraordinary and compelling reasons, so long as they are "similar in gravity" to extraordinary and compelling reasons specified by Guidelines Sections 1B1.13(b)(1)-(4). See USSG § 1B1.13(b)(5). The Fourth Circuit has recognized that an inmate's youthful age is properly factored into a district court's compassionate release analysis. See United States v. McCoy, 981 F.3d 271, 288 (4th Cir. 2020), abrogated on other grounds by, Rutherford, 146 S. Ct. 1320. It is settled, however, that extraordinary and compelling reasons are not established solely by the fact that the inmate was a youthful offender. See, e.g., Heuser-Whitaker, 2026 WL 1419124, at *3; United States v. Crenshaw, No. 2:90-cr-117, 2025 WL 618869, at *4 (E.D. Va. Feb. 26, 2025) (Davis, J.).

Defendant's youth at the time of his offense does not, on its own or in consideration with other circumstances, merit release. Defendant's multiyear participation in a criminal enterprise with the ISG as its "recognized leadership," PSR ¶ 31, is not

attributable to "[j]uveniles' susceptibility to immature and irresponsible behavior," Roper v. Simmons, 543 U.S. 551, 553 (2005). Defendant committed numerous and calculated crimes with ISG, a criminal gang, throughout his late teens and early twenties, which "was not a product of rash immaturity, a momentary misjudgment of youth, or peer pressure." United States v. Peeler, No. 3:99-cr-67, 2024 WL 1636710, at *4 (D. Conn. Apr. 16, 2024). Nor is Defendant's extensive adult criminal history attributable to youthful impulsivity and irresponsibility. See PSR ¶¶ 160-177; United States v. McCullers, 704 F. Supp. 3d 659, 667 (E.D. Va. 2023) (Smith, J.). With Defendant's offense under Count Thirty-Four, Defendant drove away as Alfonso Sheppard robbed Demareo Hardy. ECF No. 431 at 4. Instead of leaving, Defendant chose to return to Sheppard's aid and to complete the robbery of Hardy, which resulted in Hardy's death. Id. at 4-5. This was a conscious decision and not the impulsive act of an adolescent. Accordingly, Defendant's age at the time of his offense does not merit a finding of extraordinary and compelling reasons.

The United States concedes that Defendant "did not have an easy childhood," ECF No. 804 at 13, and the court agrees that Defendant's background reflects a traumatic childhood, see PSR ¶¶ 192-196, 211.[11] But this fact, considered with Defendant's youth

---

[11] The court will also address Defendant's childhood in assessing the 18 U.S.C. § 3553(a) sentencing factors in the second

at the time of his offense, is not "extraordinary and compelling." See USSG § 1B1.13(b)(5). "Tragically, it is not uncommon for a person who is incarcerated for a violent crime to have had early childhood exposure to crime and violence." United States v. Brown, No. 2:11-cr-152, 2024 WL 3357836, at *6 (E.D. Va. July 10, 2024) (Walker, J.) (emphasis added). While troubling, the circumstances of Defendant's childhood, considered alone or in combination with his youthful age during his offense, are not "similar in gravity" to extraordinary and compelling reasons enumerated by the Guidelines. USSG § 1B1.13(b)(5); see Rutherford, 146 S. Ct. at 1330 ("The term 'extraordinary' means 'most unusual,' 'far from common,' or 'having little or no precedent.'" (quoting Webster's Third New International Dictionary 807 (1976)).

To the extent Defendant argues that extraordinary and compelling reasons exist because older codefendants "who played the same role" received more lenient sentences or have been released, see ECF Nos. 802 at 5, only one of Defendant's codefendants, Alfonso Sheppard, was also convicted and sentenced pursuant to Count Thirty-Four. See ECF Nos. 284 at 36-37 (Third Superseding Indictment), 540 (Judgment). Sheppard remains incarcerated under a life sentence pursuant to Count Thirty-Four, so it is unclear how Defendant can establish a sentencing disparity

---

prong of the compassionate release analysis. See infra Section III.B.

among his codefendants. Find an Inmate, Bureau of Prisons https://www.bop.gov/inmateloc/; see United States v. Omar, No. 2:11-cr-34, 2024 WL 4786143, at *4 (E.D. Va. Nov. 14, 2024) (Smith, J.) ("[T]o establish a sentencing disparity, the defendant must provide an appropriate comparator."). Thus, at this juncture, Defendant's youthful age at the time of sentencing does not, in combination with the sentences of his codefendants, establish extraordinary and compelling reasons under Sentencing Guidelines Section 1B1.13(b)(5).

Finally, Defendant appears to argue that extraordinary and compelling reasons exist because his life sentence was unconstitutionally imposed on him as a youthful offender. See ECF No. 805 at 4, 6-7. While a youthful offender's age may properly be considered on a compassionate release motion, see, e.g., United States v. Locust, 771 F. Supp. 3d 819, 830-31 (E.D. Va. 2025) (Smith, J.), "a compassionate release motion cannot be used to challenge the validity of a defendant's conviction or sentence," United States v. Ferguson, 55 F.4th 262, 272 (4th Cir. 2022). Moreover, "the supposed invalidity of a conviction is not among the 'extraordinary and compelling reasons' that justify compassionate release." Fernandez, 146 S. Ct. at 1302; see id. at 1303 ("A reason is not 'compelling' if Congress has channeled it through the postconviction statutes."). Here, Defendant appears to argue that his sentence is unconstitutional, ECF No. 805 at 4,

and he "seeks either immediate release from . . . confinement or the shortening of its duration." Fernandez, 146 S. Ct. at 1305; ECF Nos. 802 at 8, 805 at 8. Such an argument "belongs under the umbrella of the postconviction statutes," such as 28 U.S.C. § 2255. Fernandez, 146 S. Ct. at 1305. Thus, Defendant's argument that his life sentence is unconstitutional is improperly raised in his Compassionate Release Motion and fails to establish extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A).

iii. Unusually Long Sentence

Defendant argues that his release is warranted under Sentencing Guidelines Section 1B1.13(b)(6), as he claims he has served more than ten (10) years of an "unusually long sentence." ECF No. 802 at 3, 7. Section 1B1.13(b)(6) provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

USSG § 1B1.13(b)(6).

In this case, Defendant has served more than ten (10) years of his life sentence, and courts have, at times, recognized a life sentence as "unusually long." See, e.g., Kelly v. United States, 789 F. Supp. 3d 434, 443 (E.D. Va. 2025) (Jackson, J.).

Nevertheless, Defendant has not identified any applicable "change in the law" for the court to consider, nor has he shown how that this change in the law would create a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." USSG § 1B1.13(b)(6).[12] The court is unaware of any such change in the law or disparity. As such, Defendant's offense level under Count Thirty-Four remains 43, USSG § 2A1.1; see PSR at 84, which corresponds to a life sentence under the current Sentencing Guidelines, regardless of criminal history, see USSG Ch. 5, Pt. A.

Finally, the Supreme Court held on May 28, 2026, that the United States Sentencing Commission exceeded its congressionally delegated authority by promulgating Section 1B1.13(b)(6). Rutherford, 146 S. Ct. at 1334-35; accord Fernandez, 146 S. Ct. at 1304 n.5. Specifically, Rutherford held that when a nonretroactive statutory amendment creates a gross sentencing disparity, such a disparity does not constitute an "extraordinary and compelling reason" under 18 U.S.C. § 3582(c)(1)(A). 146 S. Ct. at 1335. Because Defendant does not identify what change in the

[12] To the extent Defendant argues "age factors of today are [definitely] looked at differently than how they were at the time of [Defendant's] sentencing," ECF No. 805 at 6-7, this Opinion and Order has already explained at length why Defendant's youthful age at the time of his offense does not warrant relief, see supra Section III.A.ii.

law, if any, renders him eligible for relief under Section 1B1.13(b)(6), an award of relief under that Sentencing Guidelines provision is doubly inappropriate at this juncture.

iv. Innocence

Defendant appears to argue in his Reply that he is innocent of his offense under Count Thirty-Four and that his conviction and life sentence on that Count are invalid. Defendant variably states that he "never attempted to rob [Hardy] nor kill him," only "furnished a firearm to his co-defendant which is not a 'crime of violence,'" "was only the driver," "was a victim of circumstance," and "did not commit a murder for which he is convicted but provided a firearm to a person [whose] intent that person only knew." ECF No. 805 at 1-2, 4, 6. Alternatively, Defendant argues that he "was never convicted of 18 U.S.C. § 924(c) or 18 U.S.C. § 1951," which he claims amounts to a conviction "without the main elements needed to prove him guilty." Id. at 2, 5.

Claims of innocence are improperly raised in a compassionate release motion, and "the supposed invalidity of a conviction is not among the 'extraordinary and compelling reasons' that justify compassionate release." Fernandez, 146 S. Ct. at 1302, 1306-07. Here, Defendant appears to claim both factual and legal innocence of his conviction and sentence under Count Thirty-Four, and he seeks a sentence reduction or release. ECF Nos. 802 at 8, 805 at 8. Such claims "challenge the validity of his conviction" and "lie

close to the core of habeas corpus." Fernandez, 146 S. Ct. at 1305-07 (citation modified). As previously explained in this Opinion and Order,[13] challenges to the validity of Defendant's conviction and sentence must be raised via the federal postconviction statutes, e.g., 28 U.S.C. § 2255, and not through a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Fernandez, 146 S. Ct. at 1305. Otherwise, the compassionate release statute would provide an end run to the strict procedural limitations Congress has imposed on federal postconviction relief. See id. at 1304 (holding that an inmate "cannot deploy § 3582 to blunt what he perceives to be the sharp edges of § 2255"). Accordingly, Defendant's claims of innocence are improperly raised in his Motion for Compassionate Release, and they fail to establish extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A).

Moreover, the mere fact that Defendant was not the gunman in the killing of Demareo Hardy is not extraordinary and compelling for the purposes of 18 U.S.C. § 3582(c)(1)(A) and USSG § 1B1.13(b)(5). See ECF No. 805 at 1-2. Nor is it extraordinary and compelling that Defendant claims he did not know Sheppard would shoot Hardy. See id. at 4. It is a fundamental rule of federal criminal law that "[w]hoever commits an offense against the United

[13] See supra Section III.A.ii.

States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2 (emphasis added). Defendant was the "recognized leadership" of ISG. PSR ¶ 31.[14] He drove the vehicle as he and his ISG associates searched for a drug dealer to rob. ECF No. 431 at 4; PSR ¶ 130. Defendant handed Sheppard the murder weapon after the group encountered Hardy, and he instructed other ISG members to check on Sheppard as the robbery progressed. ECF No. 431 at 4; PSR ¶¶ 80, 88. After Sheppard shot Hardy, Defendant and his ISG associates fled together, leaving Hardy to die. ECF No. 431 at 5. The court rejects a finding that the foregoing facts are "similar in gravity" to the "heartland" extraordinary and compelling reasons enumerated by the Sentencing Guidelines. See USSG § 1B1.13(b)(5); Fernandez, 146 S. Ct. at 1304.

**B. Sentencing Factors**

Although Defendant has failed to show that extraordinary and compelling reasons make him eligible for compassionate release, the court will briefly address the sentencing factors to show why they likewise weigh against relief.

Starting with Defendant's "history and characteristics," 18 U.S.C. § 3553(a)(1), the court acknowledges that Defendant suffered a traumatizing childhood marked by addiction, abuse,

[14] See supra Section I.A. detailing Defendant's involvement in Hardy's murder.

neglect, displacement, death, and criminality, see PSR ¶¶ 192-96, 211. These experiences may well have impacted Defendant's development, and the PSR reflects issues with anger attributable to his difficult family circumstances. Id. ¶ 195. The court also considers that Defendant's older brother introduced him to gang activity when he was only five or six (5-6) years old, and that gangs provided Defendant with the support and identity that was unavailable to him in family life, including after Defendant's older brother was murdered while Defendant was still very young. Id. ¶¶ 196, 211. To the extent these facts weigh in favor of a reduced sentence, however, they are outweighed by Defendant's extensive adult criminal history, as well as his formation and "recognized leadership" of a new and violent street gang, the ISG. See id. ¶¶ 31, 52. Defendant, together with ISG, engaged in extensive criminal activity fully documented in the PSR, including fraud, manufacture and distribution of illegal drugs, theft, armed robbery, and murder. See, e.g., id. ¶¶ 36, 46, 50, 52, 56, 64, 67-70, 74, 80. Defendant's activities with ISG resulted in the death of at least one person, Demareo Dontae Hardy. Id. ¶ 80.[15]

---

[15] Although the conviction and sentence under Count 29 of the Third Superseding Indictment were ultimately vacated, see supra Section I.B., Defendant also admitted to involvement in the death of John Henry Green, see ECF No. 431 at 2-4 (Statement of Facts); Green, 67 F.4th at 660.

As reviewed at the inception of the Opinion and Order,[16] the "nature and circumstances" of Defendant's offense conduct are extremely serious. 18 U.S.C. § 3553(a)(1). On the day of Hardy's death, Defendant and his ISG co-members Zakarie Williams, Alfonso Sheppard, Raymond Brown, and a juvenile set out in a vehicle to rob a drug dealer, with Defendant driving. ECF No. 431 at 4; PSR ¶ 80. When the group encountered Hardy, a known drug dealer, Defendant stopped the car and provided a firearm to Sheppard. ECF No. 431 at 4; PSR ¶ 80. Defendant also directed Brown and the juvenile to check on Sheppard. ECF No. 431 at 4. After Brown took Hardy's clothes and other items, and after Sheppard shot Hardy several times in the torso, Defendant and his ISG associates fled. Id. at 4-5; PSR ¶ 80. Hardy was left to cry for help and die. Id. at 5; PSR ¶ 80. These facts weigh heavily against Defendant's release.

The court rejects Defendant's argument that the sentencing factors favor release because he was not Hardy's killer. See ECF No. 805 at 5-6. Defendant and his ISG associates set out to rob a drug dealer on the day of Hardy's death. ECF No. 431 at 4; PSR ¶ 130. Defendant provided Sheppard with a handgun immediately before Sheppard got out of the car and approached Hardy. ECF No. 431 at 4-5. Under these circumstances, Sheppard's use of the

---

[16] See supra Section I.A.

firearm and Hardy's death were reasonably foreseeable. Given the seriousness of Defendant's offense conduct, which resulted in Hardy's violent death, the court continues to conclude that a life sentence is "sufficient, but not greater than necessary," to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Moreover, a life sentence is also no greater than necessary to "afford adequate deterrence to criminal conduct." Id. § 3553(a)(2)(B).

While the court commends Defendant's rehabilitation as described previously in this Opinion and Order,[17] the court also notes Defendant's "HIGH RISK RECIDIVISM LEVEL," as assessed by the BOP on July 10, 2025. ECF Nos. 802-1 at 4, 804-3 at 2. Furthermore, the court considers Defendant's extensive disciplinary record while incarcerated, which includes threats of bodily harm, disruptive conduct, introduction of drugs and alcohol into his facility, fighting, possession of alcohol or drugs, and possession of a dangerous weapon. ECF No. 804-2 at 1-2, 4-6. The court is especially troubled by Defendant's admitted use of alcohol and/or illegal drugs during the commission of his offenses here. See PSR ¶ 156. Given the foregoing, and the violent nature of Defendant's offense, Defendant's life sentence remains "sufficient, but not

---

[17] See supra Section III.A.i.

greater than necessary . . . to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

The court further considers "the kinds of sentences available" and the need to "avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(3), (4), (6). Defendant appears to claim at various points in his Motion and Reply that he received a mandatory life sentence under Count Thirty-Four. See, e.g., ECF Nos. 802 at 7, 805 at 4. In fact, a conviction under 18 U.S.C. § 924(j)(1) does not carry a mandatory minimum sentence of life, and the statute provides that the defendant be "punished by death or by imprisonment for any term of years or for life." 18 U.S.C. § 924(j)(1) (emphasis added). As to the Sentencing Guidelines Range, Defendant's offense level remains 43, which corresponds to a life sentence, regardless of Defendant's extensive criminal history. USSG Ch. 5, Pt. A; see id. § 2A1.1. Because "the Guidelines range anchors the sentencing proceeding" and is "the benchmark" for selecting an appropriate sentence, § 3553(a)(3) and (4) and do not support reducing Defendant's sentence. Concepcion v. United States, 597 U.S. 481, 498 n.6 (2022) (citation modified). Moreover, given the nature and circumstances of Defendant's offense conduct, a sentence reduction would risk unwarranted sentence disparities. 18 U.S.C. § 3553(a)(6).

For the foregoing reasons, in consideration of the § 3553(a) sentencing factors, Defendant's sentence remains "sufficient, but

not greater than necessary" to achieve the purposes of sentencing, and the sentencing factors accordingly weigh against compassionate release.

**IV. CONCLUSION**

Defendant has not shown that he exhausted his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A). Moreover, he has not demonstrated "extraordinary and compelling reasons" warranting his release, and the 18 U.S.C. § 3553(a) factors do not support a sentence reduction. Finally, and importantly, the court continues to find that Defendant remains "a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g). USSG § 1B1.13(a)(2); see Rutherford, 146 S. Ct. at 1334; supra note 8 and accompanying text. Accordingly, Defendant's Motion for Compassionate Release, ECF No. 802, is **DENIED**.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Defendant, the United States Attorney at Newport News, and the Bureau of Prisons.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

September 21 , 2026